1

2

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

3

4

GRANT CLEVERLEY, in his individual capacity )
and *on behalf of* nominal plaintiff ALLSITE )
STRUCTURE RENTALS, LLC, also a defendant )
herein, )

5

6

7

Plaintiff, )

vs. )

8

9

10

CHARLES BALLANTYNE, an individual; )
ALLSITE STRUCTURE RENTALS, LLC, a )
Nevada limited liability company; and JOHN )
COFRAN, an individual, )

11

Defendants. )

12

Case No.: 2:12-cv-00444-GMN-GWF

**ORDER**

13      This action arises out of business contract disputes between Plaintiff Grant Cleverley

14 and Defendants Allsite Structure Rentals, LLC ("Allsite"), John Cofran, and Charles

15 Ballantyne (collectively, "Defendants"). (Compl., ECF No. 1.)  Before the Court is the Motion

16 to Dismiss (ECF No. 12) filed by Defendants Allsite and Cofran.  Defendant Ballantyne filed a

17 Joinder (ECF No. 13).[1]  Plaintiff filed a Response (ECF No. 16) and a Supplement (ECF No.

18 22) in response to Defendant Ballantyne's Joinder.  Defendants filed a Reply (ECF No. 25) and

19 a Notice of Supplemental Authority (ECF No. 37).  Also before the Court is Plaintiff's Motion

20 for Partial Summary Judgment (ECF No. 17), to which Defendants filed a Response (ECF No.

21 29) and Plaintiff filed a Reply (ECF No. 32).

22 **I.      BACKGROUND**

23      Allsite was originally named "Universal Rentals, LLC" and pursuant to the "Operating

24

25

---

[1] Defendant Ballantyne filed his Joinder representing himself, but has been represented by counsel for
Defendants Allsite and Cofran since May 29, 2012. (*See* Notice of Appearance, ECF No. 23.)

Agreement of Universal Rentals, LLC" ("Operating Agreement"), its members consisted of Cleverley, Cofran, Ballantyne, and a fourth member, Javier Terrazas. (Compl., 2:¶9; Operating Agreement, Ex. 1 to Compl.; Mot. to Dismiss, 3:22, 25, 4:6-10.)[2]

In 2009, Cleverley and Ballantyne each acquired ownership of fifty (50%) percent of Allsite's membership interests after Cofran sold his interest. (Compl., 3:¶¶16-17.)  Apparently, Terrazas had previously sold his membership interest to Cofran. (*See* Mot. Partial Summ. J., 4:21-23; Cleverley Decl. ¶4, Ex. 1 to Mot. Partial Summ. J., ECF No. 17; Mot. to Dismiss, 4:1-3, ECF No. 12.)

In June 2011, Allsite and Cleverley executed a Purchase and Sale Agreement ("Purchase Agreement") in which Allsite agreed to purchase Cleverley's interest in Allsite. (Purchase Agreement, Ex. A to Mot. to Dismiss, ECF No. 12-1; Ex. 4 to Mot. Partial Summ. J., ECF No. 17-4.)  Pursuant to the Purchase Agreement, Allsite executed a Promissory Note in the amount of $1,300,000.00 for the purchase of Cleverley's membership interests. (Promissory Note, Ex. B to Mot. to Dismiss, ECF No. 12-2.)

In his Complaint, Plaintiff Cleverley alleges causes of action under the Purchase Agreement and the Operating Agreement, and derivative claims on behalf of the Allsite membership.  Plaintiff names his claims for relief as: (1) declaratory relief; (2) accounting; (3) intentional misrepresentation and fraud in the inducement; (4) negligent misrepresentation; (5) breach of contract; (6) breach of contract; (7) breach of the covenant of good faith and fair dealing; (8) breach of fiduciary duty; and (9) tortious breach of the covenant of good faith and fair dealing.

As remedies, and in addition to monetary relief, Plaintiff requests rescission of the Purchase Agreement, an accounting of Allsite's finances for the time period in which Plaintiff

---

[2] The parties have not submitted any copy of the Operating Agreement that was signed by Terrazas. (*See* Operating Agreement, Ex. 1 to Compl., ECF No. 1-1; Ex. 2 to Mot. for Partial Summ. J., ECF No. 17-2; Ex. A to Resp. to Mot. for Partial Summ. J., ECF No. 29-1.)

held interest, and declaratory relief relating to Allsite's distributions to Plaintiff associated with his interest.

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss, Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (emphasis added).

 "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . .  However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on

a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend.  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## B.   Motion for Partial Summary Judgment, Rule 56

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th

Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103-04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proof, the moving party can meet its burden: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323-24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go

beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

III.  **DISCUSSION**

Plaintiff's claims are as follows:

**Claims for Relief.** Plaintiff's first and second claims request the remedies of declaratory relief pursuant to 28 U.S.C. § 2201, and an accounting pursuant to Nev. Rev. Stat. § 86.241.

**Fraud claims.** Plaintiff bases his third and fourth claims – for intentional misrepresentation, fraud in the inducement, and negligent misrepresentation – on Defendants' representations to him regarding the financial status of Allsite prior to execution of the Purchase Agreement, including an estimate of the income Allsite would report on its 2010 tax return. As relief, Plaintiff requests rescission of the Purchase Agreement.

**Contractual claims.** Plaintiff's fifth, sixth, and seventh claims – for breach of contract and breach of the covenant of good faith and fair dealing – are based on the terms of the Operating Agreement and the Purchase Agreement. Plaintiff alleges that Allsite breached these agreements by failing to make distributions and to pay commissions owed.

**Derivative claims.** Plaintiff's eighth claim for breach of fiduciary duty is a derivative claim against Ballantyne and Cofran brought in his capacity as a former member of Allsite prior to execution of the Purchase Agreement on June 14, 2011.

**Tort claims.** Plaintiff's ninth claim for tortious breach of the covenant of good faith and

fair dealing is brought against Ballantyne and Cofran, which Plaintiff alleges is based upon "their actions as set forth in the preceding paragraphs" of the Complaint. (Compl., 13:¶102.)

In their Motion to Dismiss (ECF No. 12) and Joinder (ECF No. 13), Defendants argue that the terms of the Purchase Agreement and the Operating Agreement preclude Plaintiff's claims as a matter of law, that Cleverley does not have standing to bring a derivative action, that Plaintiff's claims for declaratory relief and accounting are forms of relief, and that the remainder of Plaintiff's allegations fail to satisfy the Rule 12(b)(6) plausibility standard.

In his Motion for Partial Summary Judgment, Plaintiff requests judgment in his favor for his first claim for declaratory relief, as well as a determination of liability for his fifth and sixth claims for breach of contract. (Mot. Partial Summ. J., ECF No. 17.)

Below, the Court first addresses Plaintiff's first and second claims for the relief of a declaratory judgment and an accounting.  Next, the Court analyzes the contractual claims pursuant to both Defendants' motion to dismiss and Plaintiff's motion for summary judgment, and then addresses Defendants' motion to dismiss Plaintiff's remaining claims.

A.    **Declaratory Relief and Accounting (Claims 1 & 2)**

As a threshold matter, the Court recognizes that Plaintiff's requests for a declaration and an accounting as stated in his prayer for relief are not subject to dismissal to the extent that they are simply requested remedies premised on the success of Plaintiff's other causes of action.

To the extent that Plaintiff is pleading his first claim for relief as a separate cause of action, the Court finds that Plaintiff has not satisfied the pleading requirements of Rule 12(b)(6) and the plausibility standard of *Iqbal*/*Twombly*.  Plaintiff's first claim for relief requests a declaratory judgment "that he is entitled to a distribution from [Allsite] that is sufficient to cover his actual tax liability associated with his ownership interest in [Allsite] for the 2010 and 2011 tax years," pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201.  This section of the Declaratory Judgment Act provides that "[i]n a case of actual

controversy within its jurisdiction," a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "This is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 241 (1952). "Declaratory judgment actions are justiciable if there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Seattle Audubon Soc'y v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) (internal quotation marks omitted). "[T]he Act is intended to allow earlier access to federal courts in order to spare potential defendants from the threat of impending litigation." *Id.* (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950)).[3] Here, the Court finds that Plaintiff does not allege the existence of facts of sufficient immediacy and reality to warrant the issuance of a declaratory judgment in his first claim. Plaintiff's requested relief would not appear to resolve any immediate controversies, such as would be the case if the alleged breaches had not already occurred, for example. As discussed below, at this time the Court also declines to exercise its discretion to grant Plaintiff declaratory relief as a remedy for any of Plaintiff's other causes of action.

To the extent that Plaintiff's second claim for the relief of an accounting is alleging a separate cause of action pursuant to Nev. Rev. Stat. § 86.241, which provides for the rights of members and managers of a limited liability company to obtain or examine records, the Court

---

[3] In *Skelly*, the Supreme Court explained:

> Prior to [the Declaratory Judgment] Act, a federal court would entertain a suit on a contract only if the plaintiff asked for an immediately enforceable remedy like money damages or an injunction, but such relief could only be given if the requisites of jurisdiction, in the sense of a federal right or diversity, provided foundation for resort to the federal courts. The Declaratory Judgment Act allowed relief to be given by way of recognizing the plaintiff's right even though no immediate enforcement of it was asked.

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-672 (1950).

finds that Plaintiff has not alleged the elements required for relief under section 86.241, and has not pled the existence of sufficient facts supporting such a claim for relief. Accordingly, to the extent that Plaintiff's second claim for relief is a separate cause of action, it is dismissed without prejudice for failure to state a claim upon which relief can be granted.

**B.**   **Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing, and Request For Declaratory Relief (Claims 1, 5, 6, & 7)**

Plaintiff's fifth, sixth, and seventh claims – for breach of contract and breach of the covenant of good faith and fair dealing – are contractual claims based on the terms of the Operating Agreement and the Purchase Agreement. Because Plaintiff's fifth and sixth claims for breach of contract are also the subject of his Motion for Partial Summary Judgment (ECF No. 17), the Court discusses those claims first. The Court also addresses Plaintiff's seventh claim for contractual breach of the covenant of good faith and fair dealing pursuant to the motion to dismiss, and addresses Plaintiff's first claim for declaratory relief pursuant to the motion for summary judgment.

To succeed on a claim for breach of contract a plaintiff must show: (1) the existence of a valid contract; (2) that plaintiff performed or was excused from performance; (3) that the defendant breached the terms of the contract; and (4) that the plaintiff was damaged as a result of the breach. *See Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement"). In Nevada, an implied covenant of good faith and fair dealing exists in every commercial contract, *Consol. Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev. 1998) (per curiam), and a plaintiff may assert a claim for its breach "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract," *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922-923 (Nev. 1991).

In his fifth claim for distributions pursuant to the Operating Agreement, Plaintiff alleges that "Allsite committed to issue distributions to Cleverley sufficient to cover his actual tax liability associated with his ownership interest in Allsite contingent only on Allsite's financial ability to make those distributions." (Compl., 9:¶67.)  He alleges that Allsite "has sufficient financial means to make a distribution to Cleverley to cover his tax liability associated with his ownership interest in Allsite for the 2010 tax year," and "has failed to make the tax liability distribution and, on information and belief, other distributions required by the [Operating Agreement]." (Compl., 9:¶¶68, 70.)  Plaintiff attaches a copy of the Operating Agreement to his Complaint, which contains the following provision for "Distributions" and "Tax Distribution":

> 6.2. Distributions.  Subject to applicable law and any limitations elsewhere in this Agreement, the Members shall determine the amount and timing of all distributions of cash, or other assets, by the Company.  Except as otherwise provided in this Agreement, all distributions shall be made to all Members, in proportion to each Members' Membership Interest.  All distributions shall be made to Members who, according to the books and records of the Company, are the holders of record on the actual date of distribution.  Neither the Company nor the Members shall incur any liability for making distributions.  No Member has the right to demand and receive any distribution from the Company in any form other than cash.  No Member may be compelled to accept from the Company a distribution of any asset-in-kind in lieu of a proportionate distribution of cash being made to other Members.

(Operating Agreement art. 6.2.)

> 6.3. Tax Distribution. To the extent of available cash, the Members shall be entitled to receive cash distributions for each taxable year in amounts sufficient to enable each Member to discharge any federal, state and local tax liability for such taxable year (excluding penalties) arising as a result of their Membership Interest in the Company, determined by assuming the applicability to each Member of the highest combined effective marginal federal, state and local income tax rates for any individual or corporation actually obligated to report on any tax returns income derived from the Company.

(Operating Agreement art. 6.3.)

In his sixth claim for commissions pursuant to the Purchase Agreement, Plaintiff alleges

that "[a]s part of [his] employment with Allsite, Allsite agreed to pay certain commissions on certain projects that [he] had brought," and that "Allsite reaffirmed is [sic] obligation to pay [him] commissions in the Purchase Agreement." (Compl., 10:¶¶76-77.)  Plaintiff alleges that Allsite "has failed to pay the commissions owed." (Compl., 10:¶78.)

In his seventh claim pursuant to the Operating Agreement and the Purchase Agreement, Plaintiff alleges that Defendants breached the implied covenant by their actions "as set forth in the preceding paragraphs" of the Complaint, "including, without limitation, Allsite's failure and all Defendants' refusal to issue a distribution to Cleverley sufficient to cover his tax liability associated with his ownership interest in [Allsite] and Allsite's failure to make income distributions to Cleverley as was the general practice in past years and, instead, stockpiling its income until after the Purchase Agreement closed." (Compl., 11:¶84.)

### a.   <u>Motion to Dismiss Analysis (Claims 5, 6, & 7)</u>

In their Motion to Dismiss, Defendants challenge the factual sufficiency of Plaintiff's allegations that Defendants breached the terms of the contracts.  In a footnote, Defendants also challenge the adequacy of Plaintiff's pleading for breach of the covenant of good faith and fair dealing. (*See* Mot. to Dismiss, 16:21 n.8 ("Cleverley failed to plead an essential element: that Allsite acted deliberately.").)

Specifically, Defendants first cite to the terms of the Purchase Agreement to argue that "Cleverley accepted responsibility for all income tax obligations under the Purchase Agreement," and that therefore his fifth and seventh claims alleging Allsite's failure to make distributions must be dismissed with prejudice. (Mot. to Dismiss, 16:6-7, 12-13.)  Under the heading, "Tax Obligations," section four of the Purchase Agreement states that "[Plaintiff] is responsible for any and all pro-rata income tax obligations associated with his ownership of the 50% of [Allsite] through the Effective Date," which was June 14, 2011. (Purchase Agreement, Ex. A to Mot. to Dismiss, ECF No. 12-1; Ex. 4 to Mot. Partial Summ. J., ECF No. 17-4.)  With

regard to this provision Defendants argue that the "Purchase Agreement contains the parties' agreement on the issue of tax distributions and supersedes any prior agreement." (Reply to Mot. to Dismiss, 16:25-26, ECF No. 25.)[4]  Defendants point out that the Purchase Agreement provides that it "supersedes any and all prior agreements, whether oral or written, by, between and among the parties pertaining to the subject matter of this Agreement (including the within referenced related agreements)" (Purchase Agreement § 7). (*Id*. at 16:25-26.)  Earlier in the same section, the Purchase Agreement provides that it

> contains all of the parties' representations, warranties, statements, agreements, promises, covenants, guarantees, assurances, understandings and related matters constituting, relating to or otherwise concerning the subject matter of the sale and purchase transaction which is the subject of this Agreement (including the within referenced items such as the promissory note, pledge, security and escrow agreement, non-disclosure agreement, non-competition agreement, etc.)

(Purchase Agreement § 7.)

Here, the Court agrees that the language of the "Tax Obligations" provision in the Purchase Agreement plainly states Plaintiff's responsibility for his income tax obligations, but does not find that it clearly addresses the parties' intentions regarding tax distributions as provided for in the Operating Agreement.  Therefore, the Court does not find that this argument is a basis on which to dismiss Plaintiff's fifth and seventh claims for failure to state a claim upon which relief can be granted.

---

[4] This provision states, in full:

> SECTION 4.   Tax Obligations.   Seller is responsible for any and all pro-rata income tax obligations associated with his ownership of the 50% of the Company through the Effective Date. Seller will receive a Form K-1 for year 2011 from the Company, and will be responsible for payment of any and all taxes associated with it.   Seller is responsible for any and all taxes associated with the sale of the Member Interest, including but not limited to capital gains taxes.

(Purchase Agreement § 4.)

Defendants next cite to the "Distributions" provision of the Operating Agreement to support their argument that any liability for Plaintiff's fifth claim in particular is precluded by the parties' agreement that "[n]either [Allsite] nor the Members shall incur any liability for making distributions" (Operating Agreement, art. 6.2.)  Plaintiff responds by arguing that "[t]his language absolves liability for *making* distributions, not for failing to make required distributions," and that "it absolves liability for the decision to make distributions where it may not be in the best interest of [Allsite] to make the distribution, or it may affect [Allsite]'s ability to operate." (Response to Mot. to Dismiss, 18:11-14, ECF No. 16.)  The Court does not find this argument persuasive.  Plaintiff also argues that this provision must be construed in context with the "Tax Distribution" provision, and that "[i]f a Member cannot enforce this provision against Allsite, the provision is meaningless." (*Id.* at 18:17-21.)  Defendants respond in reply that Plaintiff's argument contradicts statutory authority under the "Operating Agreement" section of Nevada Revised Statutes, which allows restriction or elimination of a member's duties. Nev. Rev. Stat. § 86.286(5).[5]  This section also provides that an operating agreement provision may limit or eliminate members' liabilities for breach of contract and breach of duties. Nev. Rev. Stat. § 86.286(6).  Both these provisions prohibit elimination of the implied contractual covenant of good faith and fair dealing.  Nevertheless, the Court finds that Defendants have not shown Plaintiff's failure to state a claim upon which relief can be granted

---

[5] This subsection provides, in full:

> 5.  To the extent that a member or manager or other person has duties to a limited-liability company, to another member or manager, or to another person that is a party to or is otherwise bound by the operating agreement, the member, manager or other person's duties may be expanded, restricted or eliminated by provisions in the operating agreement, except that an operating agreement may not eliminate the implied contractual covenant of good faith and fair dealing.

Nev. Rev. Stat. § 86.286(5).

on this basis, where construction of the Operating Agreement may plausibly result in a conclusion that the Operating Agreement cannot or does not eliminate Allsite's liability for making distributions.

Defendants also cite to the "Mutual Waiver and Release" subsection of the Purchase Agreement to argue that even if Allsite failed to make sufficient distributions, Plaintiff has waived and released any such claim, as well as any claim for breach of the implied covenant of good faith and fair dealing.

This "Mutual Release" subsection of the Purchase Agreement provides that as consideration for the transaction,

> except for the duties, obligations and other matters which are the subject of and specifically provided for in this Agreement including any and all related agreements referenced therein, the undersigned parties agree to and hereby do forever waive, release and discharge for all purposes the other from any and all claims, suits, causes of action, debts, obligations, liabilities and all other matters that each party has or may now have or may hereafter have against the other party.

(Purchase Agreement § 5.B.)  The Mutual Release was

> intended to . . . cover and include claims, suits, causes of action, debts, obligations, liabilities and all other matters which are now known or are <u>unknown</u> to each of the parties,

and to

> cover, bind and obligate the parties and their respective spouses, transferees, successors, assigns, heirs, executors, administrators, and receivers.

(*Id.*)  Furthermore, the Mutual Release provides that "[Allsite]'s Manager (John Cofran) and Members are hereby expressly made third party beneficiaries of the within Mutual Release."

(*Id.*)  As part of the Mutual Release, the parties represented that each of them

> acknowledges and agrees to and with the other that they are represented by legal counsel for purposes of this Agreement, that they have consulted with their attorney concerning the instant waiver and release including any unknown claims (that may subsequently be discovered), and that they understand the effect, ramifications and consequences of providing such waiver and release as part of this Agreement.

(*Id.*)

1    In response, Plaintiff first argues that the Mutual Release in the Purchase Agreement

2    does not alter Allsite's obligations under the "Tax Distribution" section of the Operating

3    Agreement because the Mutual Release excepts "the duties, obligations and other matters

4    which are the subject of and specifically provided for in this Agreement including any and all

5    related agreements referenced therein" (Purchase Agreement § 5.B.). (Resp. to Mot. to Dismiss,

6    17:20-22, ECF No. 16.)  Plaintiff argues that the Operating Agreement is included in this

7    exception as one of the "related agreements referenced therein."  Plaintiff also argues that even

8    if this is not the case, "Section 4 alters only the obligations Allsite had to Cleverley for his pro-

9    rata share of the income tax for 2011 – through June 14, 2011," not "Allsite's obligations for

10    the 2010 tax years." (Resp. to Mot. to Dismiss, 17:12-14.)  More persuasively, Plaintiff argues

11    that dismissal of his claims is inappropriate because he has alleged sufficient facts entitling him

12    to rescission of the Purchase Agreement, which would eliminate the validity of this argument,

13    and also because the language of the Mutual Release does not show that Plaintiff "promised or

14    agreed to release either Cofran or Ballantyne from any claims," solely Allsite. (Response to

15    Mot. to Dismiss, 20:2-7, ECF No. 16.)

16        The Court finds that Plaintiff's argument as to the Operating Agreement's inclusion as a

17    "related agreement referenced therein" is unpersuasive, and discusses this issue further in the

18    following section.  As Defendants point out, "[s]ection 1 of the Purchase Agreement

19    specifically identifies the 'related agreements' to [Plaintiff]'s sale of his membership interest:

20    promissory note; non-competition agreement; non-disclosure agreement; financing statement;

21    assignment of LLC membership interest; pledge, security and escrow agreement." (Reply to

22    Mot. to Dismiss, 17:16-19.)  The Court agrees with Defendants that Plaintiff's interpretation of

23    the Purchase Agreement appears to contradict the plain language, and would appear to render

24    its provisions meaningless.  However, this is not a basis on which to grant Defendants' motion

25    to dismiss.

Finally, Defendants argue that Plaintiff should be equitably estopped from asserting his sixth claim for non-payment of commissions pursuant to the Purchase Agreement, because Plaintiff demanded rescission of the contract in January 2012, and did not respond to Defendants' request for assurances in March 2012. (Mot. to Dismiss, 18:4-8.)  In response, Plaintiff cites Schedule A of the Purchase Agreement, submitted by Defendants in their Motion to Dismiss, which provides for payment of commissions. (*See* Schedule A of Purchase Agreement, Ex. A to Mot. to Dismiss, ECF No. 12-1.)  Plaintiff argues that this Schedule A was an acknowledgment by Allsite of its prior obligation to pay commissions, and that even if the Purchase Agreement is rescinded, the duty to pay commissions would remain because it is not based on the Purchase Agreement.  Plaintiff argues that even if he cannot assert his rights to commissions under the Purchase Agreement, Defendants' duties to pay commissions are independent of the Purchase Agreement.  Here, although the Court does not consider whether Schedule A memorializes any obligations of the parties outside of the Purchase Agreement, the Court finds that Plaintiff has adequately alleged facts to support his claim that Defendants breached a duty to pay him commissions, even if not under the Purchase Agreement. Accordingly, the Court will not dismiss Plaintiff's claims on this basis.

Construing Plaintiff's allegations in the light most favorable to him, the Court finds that Plaintiff has alleged facts sufficient to plausibly show that Defendants breached the terms of the Operating Agreement and the Purchase Agreement by failing to make distributions and pay commissions consistent with the intent of the parties.  The Court finds that Plaintiff has adequately pled the elements of a breach of contract cause of action, for each of Plaintiff's fifth and sixth claims. The Court further finds that although Plaintiff has not specifically pled each of the elements of his seventh cause of action for contractual breach of the covenant and good faith and fair dealing, Plaintiff has alleged sufficient facts to support a plausible claim that even if Defendants literally complied with the contracts, they acted deliberately in contravention of

the intention and spirit of the contracts.  Accordingly, the Defendants' Motion to Dismiss will be denied as to these causes of action.

### b.    <u>Motion for Summary Judgment Analysis (Claims 1, 5, & 6)</u>

Because Plaintiff has moved for summary judgment in his favor as to his first claim for declaratory relief and as to liability for his fifth and sixth claims for breach of contract, the Court next considers whether the evidence submitted is sufficient to grant judgment in Plaintiff's favor.  In his Motion for Partial Summary Judgment (ECF No. 17), Plaintiff requests a declaration from the Court that he is entitled to distributions under the Operating Agreement in an amount sufficient to cover his tax obligations arising from his membership interest in Allsite, including 2010 and 2011. (Mot. for Partial Summ. J., 3:25-27, 13:6-7.)  He also requests judgment in his favor as to Allsite's breach of the Operating Agreement for failing to make distributions to cover his tax obligations for 2010. (*Id.* at 4:1-2.)  Finally, he requests judgment in his favor as to Allsite's breach of "an agreement between the parties for commissions [owed to him] as a salesman for [Allsite]." (*Id.* at 4:3-4.)

Generally, questions of contract construction are questions of law suitable for determination by summary judgment in the absence of ambiguity or other factual complexities. *Ellison v. Cal. State Auto. Ass'n*, 797 P.2d 975, 977 (1990).  "[A]bsent some countervailing reason, contracts will be construed from the written language and enforced as written." *Id.* "Summary judgment is appropriate when a contract is clear and unambiguous, meaning that the contract is not reasonably susceptible to more than one interpretation." *Univ. of Nev., Reno v. Stacey*, 997 P.2d 812, 814 (Nev. 2000).  "Whether or not a document is ambiguous is a question of law for the court." *Margrave v. Dermody Props., Inc.*, 878 P.2d 291, 293 (Nev. 1994).  Where a contract is ambiguous, requiring a court to resort to extrinsic evidence to ascertain the intention of the parties, summary judgment is inappropriate in the face of contradictory or conflicting evidence. *Id.*  "[W]here two interpretations of a contract provision

are possible, a court will prefer the interpretation which gives meaning to both provisions rather than an interpretation which renders one of the provisions meaningless." *Quirrion v. Sherman*, 846 P.2d 1051, 1053 (Nev. 1993) (per curiam).

Here, pursuant to the summary judgment standard, the Court draws all justifiable inferences in favor of Defendants and considers whether Plaintiff has met his initial burden to establish the absence of a genuine issue of fact.  Below, the Court first analyzes Plaintiff's arguments and evidence relating to his first and fifth claims, which turn on whether Allsite breached an obligation under the Operating Agreement to issue distributions sufficient to enable Plaintiff to discharge his tax liability arising as a result of his Membership Interest in Allsite.

### i.    *Claims one and five*

Regarding claims one and five, Plaintiff restates his arguments from the Response to the Motion to Dismiss, and quotes from the Operating Agreement provision that describes Allsite's method of distributions for tax liabilities "arising as a result of [each Members'] Membership Interest in [Allsite]" (*see* Operating Agreement, art. 6.3), to argue that this provision entitles him to tax distributions for 2010 and through June 14, 2011, the effective date of the Purchase Agreement.[6]  Plaintiff argues that the "Tax Obligations" section of the Purchase Agreement does not alter Allsite's obligations under the Operating Agreement, where it provides that he is

---

[6] This provision states, in full:

> 6.3. Tax Distribution.  The Company shall keep in reserve an amount equal to the estimated income taxes due for any fiscal year.  To the extent of available cash, the Members shall be entitled to receive cash distributions for each taxable year in amounts sufficient to enable each Member to discharge any federal, state and local tax liability for such taxable year (excluding penalties) arising as a result of their Membership Interest in the Company, determined by assuming the applicability to each Member of the highest combined effective marginal federal, state and local income tax rates for any individual or corporation actually obligated to report on any tax returns income derived from the Company.

(Operating Agreement, art. 6.3.)

responsible for "pro-rata income tax obligations associated with his ownership" including taxes associated with his Form K-1 for 2011, and "any and all taxes associated with the sale of the Member Interest" (Purchase Agreement § 4).[7]

In Nevada, the general rules of contractual construction apply, where "[e]very word must be given effect if at all possible," "[i]f clauses in a contract appear to be repugnant to each other, they must be given such an interpretation and construction as will reconcile them if possible," and "[i]t is only where clauses are totally irreconcilable that a choice may be made between them." *Royal Indem. Co. v. Special Supply Co.*, 413 P.2d 500, 502 (Nev. 1966) (internal citations and quotation marks omitted); *see also Quirrion v. Sherman*, 846 P.2d at 1053 ("Where two interpretations of a contract provision are possible, a court will prefer the interpretation which gives meaning to both provisions rather than an interpretation which renders one of the provisions meaningless.").

Plaintiff appears to argue that because the "Tax Obligations" section does not expressly refer to the Operating Agreement, it did not alter the terms of the Operating Agreement and was merely his "affirmation of his understanding that he, like all other members, is ultimately responsible for his taxes own tax liability [sic]." (Reply to Mot. for Partial Summ. J., 5:17-19.) Defendants argue in response that Plaintiff's acceptance of responsibility under this section prevents Plaintiff from "transfer[ring] his tax liability to Allsite." (Resp. to Mot. Summ. J.,

---

[7] This provision states, in full:

> SECTION 4.   Tax Obligations.   Seller is responsible for any and all pro-rata income tax obligations associated with his ownership of the 50% of the Company through the Effective Date. Seller will receive a Form K-1 for year 2011 from the Company, and will be responsible for payment of any and all taxes associated with it.   Seller is responsible for any and all taxes associated with the sale of the Member Interest, including but not limited to capital gains taxes.

(Purchase Agreement § 4.)

15:18, ECF No. 29.)  However, this does not address Plaintiff's argument as to the meaning of this provision, and is in fact consistent with Plaintiff's argument that he is responsible for his own tax liability.  A plausible construction of the "Tax Distribution" section of the Operating Agreement is that it does not contemplate a transfer of tax liability, but solely a distribution equal to members' tax liabilities.  However, this is not exactly what Plaintiff argues.  Specifically, in relation to the "Tax Distribution" section of the Operating Agreement, Plaintiff argues that the "Tax Obligations" section of the Purchase Agreement "affirms what the parties already had agreed to under the Operating Agreement." (Reply to Mot. Summ. J., 5:7-8.)  Plaintiff's construction of the "Tax Distribution" section of the Operating Agreement as describing members' ultimate responsibility for their tax liability is not clearly evident from the language of the Operating Agreement.  Accordingly, the Court finds that the Purchase Agreement's "Tax Obligations" provision is not clear and unambiguous as to its effect on the "Tax Distribution" provisions in the Operating Agreement.  This is particularly the case when considering this provision in context with the remainder of the Purchase Agreement, as discussed below.  Accordingly, with this argument Plaintiff has not met his initial burden under the summary judgment standard to establish the absence of a genuine issue of fact.

Plaintiff next argues that even if the "Tax Obligations" section of the Purchase Agreement altered the terms of the Operating Agreement, this section only applies to his pro-rata share for 2011, and not for 2010.  However, the plain language of this section does not state a beginning date, as would be necessary to limit its application to 2011.  Instead, the language provides for Plaintiff's responsibility "for any and all pro-rata income tax obligations through the Effective Date." (*See* Purchase Agreement § 4.)  Plaintiff's construction may be reasonable, but it is not clear and unambiguous from the language of the Purchase Agreement.  Accordingly, the Court finds that Plaintiff has not met his burden as to this issue.

Plaintiff then argues that the Mutual Release in the Purchase Agreement does not release

any claims he might have for distributions under the Operating Agreement, because of the Mutual Release language excepting "the duties, obligations and other matters which are the subject of and specifically provided for in this Agreement including any and all related agreements referenced therein." (Mot. for Partial Summ. J., 14:17-21; Purchase Agreement § 5.B.)  Plaintiff argues that the Operating Agreement is one of the "related agreements referenced therein," and that therefore his claims for breach of the Operating Agreement are not waived or released.

        As the Court noted above, Plaintiff's interpretation of the Purchase Agreement appears to render its provisions meaningless.  The Purchase Agreement provides that it "supersedes any and all prior agreements, whether oral or written, by, between and among the parties pertaining to the subject matter of this Agreement (including the within referenced related agreements)." (Purchase Agreement § 7.)  Considering the Purchase Agreement as a whole, the "within referenced related agreements" appears to refer to those agreements named in section one, including: "(1) Non-Competition Agreement, (2) Non-Disclosure Agreement, (3) Financing Statement, (4) Assignment of LLC Membership Interest and (5) Pledge, Security and Escrow Agreement" as well as the Promissory Note. (Purchase Agreement § 1.)

        Plaintiff's interpretation and construction of the Mutual Release and the "Tax Obligations" sections of the Purchase Agreement would also require the Court to disregard the language in the "Final and Complete Agreement" section, which provides that:

> [The Purchase] Agreement contains all of the parties' representations, warranties, statements, agreements, promises, covenants, guarantees, assurances, understandings and related matters constituting, relating to or otherwise concerning the subject matter of the sale and purchase transaction which is the subject of this Agreement (including the within referenced items such as the promissory note, pledge, security and escrow agreement, non-disclosure agreement, non-competition agreement, etc.).

and that

> [The Purchase] Agreement is intended and deemed for all purposes to be the parties' final agreement which supersedes any and all prior agreements, whether oral or written, by, between and among the parties pertaining to the subject matter of this Agreement (including the within referenced related agreements).

(Purchase Agreement § 7.)  The Purchase Agreement does not specifically define the phrase, "the within referenced related agreements," and therefore Plaintiff is correct that it also does not "specifically exclude[] the Operating Agreement." (Reply to Mot. for Partial Summ. J., 4:20 – 5:1-2.)  However, this does not show that Plaintiff's interpretation is the only reasonable interpretation, or that the Purchase Agreement is clear and unambiguous in his favor, as he must show to satisfy his initial burden on a summary judgment motion.  The language in the Purchase Agreement referring to the other documents executed contemporaneously would also support a reasonable interpretation that the phrase, "the within referenced related agreements," includes in its definition only those contemporaneously executed agreements to the Purchase Agreement, i.e., (1) the Promissory Note; (2) the Pledge, Security and Escrow Agreement; (3) the Non-Disclosure Agreement; (4) the Non-Competition Agreement; (5) the Financing Statement; and (5) the Assignment of LLC Membership Interest.  Accordingly, the Court cannot grant summary judgment in Plaintiff's favor on this basis.

Finally, to the extent that Plaintiff relies on his Declarations and their exhibits (Ex. 1 to Mot. for Partial Summ. J.; Exs. 7-9 to Reply to Mot. for Partial Summ. J.), the March 2011 email from Cofran (Ex. 3 to Mot. for Partial Summ. J.), or the letters from the United States Internal Revenue Service and the Maryland Comptroller (Exs 5-6, to Mot. for Partial Summ. J.), the Court does not find that resort to this extrinsic evidence satisfies Plaintiff's initial burden.

Here, the Court finds that Plaintiff has not met his initial burden to show an absence of any genuine issue of material fact as to the proper interpretation and construction of the Purchase Agreement and the Operating Agreement with regard to distributions.  Even if the

1    Court were to find that Plaintiff's interpretation is reasonable, Plaintiff has not met his initial

2    burden to show that these contracts are clear and unambiguous in his favor.  Accordingly,

3    summary judgment in Plaintiff's favor is not appropriate, and the Court need not consider

4    Defendants' evidence.  Furthermore, the Court cannot find that Plaintiff has shown that he is

5    entitled to declaratory relief in his favor, as demonstrated by the discussion above.

6    Accordingly, Plaintiff's request for declaratory judgment will be denied.

                          ***ii.***    ***Claim six***

8           Plaintiff addresses claim six in a one-paragraph section of his motion, and argues that

9    there is no dispute that Allsite owes him commissions for work he performed while working for

10   Allsite, and refers to "his employment contract" as the basis for this agreement. (Mot. for

11   Partial Summ. J., 16:8.)  Plaintiff argues that Allsite owes him commissions "[r]egardless of

12   whether the Purchase Agreement is enforced or rescinded." (Mot. for Partial Summ. J., 16:8-

13   15.)  For support, Plaintiff cites to his declaration, to Schedule B of the Purchase Agreement,

14   submitted by Defendants, which refers to Allsite's assumption of lease and bank loan

15   obligations, as well as to section one of the Purchase Agreement, which refers to commissions

16   owed under Schedule A, also submitted by Defendants. (*See* Schedules A & B to Purchase

17   Agreement, Ex. A to Mot. to Dismiss, ECF No. 12-1.)

18          In his Reply, Plaintiff "concedes that there are genuine issues of fact as to the amount

19   [he] is owed for additional commissions acknowledged in Schedule A of the Purchase

20   Agreement" and claims that additional discovery is needed. (Reply to Mot. for Partial Summ.

21   J., 3:6-8.)  However, Plaintiff argues that "the summary conclusion the [he] is owned money

22   (i.e. liability) is warranted now." (*Id*. at 3:10-11.)  The Court finds that Plaintiff does not

23   satisfactorily establish Allsite's liability for commissions based on the Purchase Agreement,

24   where a determination of the Purchase Agreement's validity still awaits resolution, and Plaintiff

25   provides no other basis for liability.  The Court cannot grant summary judgment in Plaintiff's

favor as to liability for an "employment contract" that is not described or provided to the Court.

Plaintiff argues that if the Purchase Agreement is rescinded, he will still be entitled to "commissions based on Allsite's breach of prior agreements as noted in the March 15, 2012 letter wherein Allsite breaches earlier commission agreements." (*Id.* at 11:6-8.)  Plaintiff does not provide a citation or further explanation of which letter he refers to.  The Court notes that this argument may refer to the March 15, 2011 letter from Cofran to Ballantyne and Plaintiff (Ex. E. to Resp. to Mot. for Partial Summ. J., ECF No. 29-5), or to the March 15, 2011 email from Cofran to Ballantyne and Plaintiff. (Ex. Z to Resp. to Mot. for Partial Summ. J., ECF No. 29-26).  However, either way, the Court finds that neither of these documents supports Plaintiff's argument that Allsite acknowledged its breach of prior commission agreements.  Furthermore, the Court finds no other documents other than these to support such an argument.  Therefore, the Court cannot find that Plaintiff has met his initial burden to show liability for commissions owed apart from those specified in the Purchase Agreement.  Finally, the Court finds that Plaintiff has not met his initial burden to show liability for commissions under the Purchase Agreement.  Accordingly, summary judgment is not appropriate for this claim.

## C. <u>Negligent and Intentional Misrepresentation and Fraud in the Inducement (Claims 3 & 4)</u>

In his third and fourth claims for negligent and intentional misrepresentation and fraud in the inducement, Plaintiff alleges that Defendants made false representations to him regarding Allsite's financial status that led him to execute the Purchase Agreement, "including, in early 2011, an estimate of the income that the Company would report on its income tax return for 2010." (Compl., 8:¶50; *see also* 9:¶60.)  In his claim for intentional misrepresentation and fraud in the inducement, Plaintiff alleges that "Defendants knew that these representations were false or knew that they had insufficient information to ascertain the truth of these representations" (Compl., 8:¶51), and in his claim for negligent misrepresentation, Plaintiff alleges that

"Defendants failed to exercise reasonable care or competence in representing the status of [Allsite]" (Compl., 9:¶60).

To succeed on a claim for fraudulent inducement or intentional misrepresentation, a plaintiff must show: (1) a false representation; (2) made with knowledge or belief that it is false or without sufficient foundation; (3) intent to induce reliance; and (4) damages resulting from this reliance. *See Nelson v. Heer*, 163 P.3d 420, 426 (Nev. 2007).  Any oral representation that directly contradicts the terms of an express written contract cannot serve as evidence for such a claim, because the parol evidence rule would apply to bar such proof. *See Road & Highway Builders v. N. Nev. Rebar*, 284 P.3d 377, 380-81 (Nev. 2012).

For the tort of negligent misrepresentation, Nevada has adopted the Restatement (Second) of Torts definition. *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998) (citing *Bill Stremmel Motors, Inc. v. First Nat'l Bank of Nev.*, 575 P.2d 938, 940 (Nev. 1978)). Under this theory of liability:

> One who, in the course of his business, profession or employment, or in any other action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552 (1977); *see also Bill Stremmel Motors, Inc.*, 575 P.2d at 940.

Furthermore, any claim of "fraud or mistake" must be alleged "with particularity." Fed. R. Civ. P. 9(b). A complaint alleging fraud or mistake must include allegations of the time, place, and specific content of the alleged false representations and the identities of the parties involved. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam).

Defendants argue that Plaintiff's factual allegations are insufficient to satisfy the Rule 9(b) pleading standard and the *Iqbal/Twombly* plausibility standard.  In his Complaint, the most

specific factual allegation of a false representation is under the heading, "Allegations Applicable to All Claims for Relief," in which he alleges that "[i]n early 2011, Cofran, on behalf of Allsite, provided Cleverley and Ballantyne an estimated income of [Allsite] for 2010 of $450,000 and distributed Cleverley and Ballantyne $50,000 each to cover tax liabilities." (Compl., 4:¶24.)  The Court agrees with Defendants that this is insufficient to meet the requirements of Rule 9(b), and will grant the motion to dismiss as to Plaintiff's third and fourth claims, for failure to properly allege facts supporting his claim of false representation.  The Court will dismiss these causes of action without prejudice, with leave to amend.

### D.   <u>Tortious breach of the covenant of good faith and fair dealing (Claim 9)</u>

Where a claim for tortious breach of the covenant of good faith and fair dealing is alleged, as opposed to contractual breach of the covenant of good faith and fair dealing, a plaintiff must also allege the existence of a special relationship of reliance or fiduciary duty. *See A.C. Shaw Constr., Inc. v. Washoe Cnty.*, 784 P.2d 9, 10 (Nev. 1989) (per curiam) (construing *Aluevich v. Harrah's*, 660 P.2d 986 (Nev. 1983)).  Such an action is limited to "'rare and exceptional cases'" and "is appropriate where 'the party in the superior or entrusted position' has engaged in 'grievous and perfidious misconduct.'" *Great American Ins. Co. v. General Builders, Inc.*, 934 P.2d 257, 263 (Nev. 1997) (quoting *K Mart Corp. v. Ponsock*, 732 P.2d 1364, 1370-71 (Nev. 1987)).

The Nevada Supreme Court has recognized this special element of reliance in "cases involving special relationships characterized by elements of public interest, adhesion, and fiduciary responsibility relationships," and relationships "including those formed by employment, bailment, insurance, partnership, and franchise agreements." *Id*. (citing *Ponsock*). Liability has also been denied "where agreements have been heavily negotiated and the aggrieved party was a sophisticated businessman." *Id*. (citing *Aluevich*).

In his ninth claim for tortious breach of the covenant of good faith and fair dealing,

Plaintiff alleges that he "placed special reliance and trust in Ballantyne and Cofran as his partner and business manager," and that they "were in a superior or entrusted position because of each of their knowledge and understanding of the finances of [Allsite] and their fiduciary duties to both [Allsite] and to [Plaintiff]." (Compl., 13:¶¶100-101.)  He alleges that they "breached their duties of good faith and fair dealing to [Plaintiff] by their actions as set forth in the preceding paragraphs." (Compl., 13:¶102.)

 Here, the Court finds that Plaintiff's factual allegations do not support his claims that a special relationship of reliance or fiduciary duty existed between himself and Defendants Ballantyne and Cofran, or that Defendants Ballantyne and Cofran were in a superior or entrusted position to himself as an owner of fifty percent of the membership interest of Allsite. Plaintiff has provided no legal authority with analogous facts to support his claim of a special relationship of reliance or fiduciary duty here.  Furthermore, Plaintiff has failed to specifically allege what actions of Defendants Ballantyne and Cofran constitute grievous and perfidious misconduct.  The Court finds that reference to the defendants' "actions as set forth in the preceding paragraphs" is not sufficient to overcome this deficiency.  Accordingly, the Court will dismiss this cause of action without prejudice.

**E. Derivative Claim for Breach of Fiduciary Duty (Claim 8)**

 Nevada statutes provide for derivative actions on the part of members of limited liability companies where a plaintiff was a member at the time of the transaction of which the plaintiff complains. Nev. Rev. Stat. §§ 86.483–.489.

 In the context of a claim for breach of fiduciary duty, the Nevada Supreme Court has described a fiduciary duty as one where the defendant owes plaintiff a duty to act for or to give advice for plaintiff's benefit upon matters within the scope of the relation. *See Stalk v. Mushkin*, 199 P.3d 838, 843 (Nev. 2009) (quoting Restatement (Second) of Torts § 874 cmt. a (1979)).

 In his eighth claim for breach of fiduciary duty, Plaintiff alleges that Defendants

"Ballantyne and Cofran owe fiduciary duties to Allsite, Cofran as a manager and Ballantyne as a member," and describes his claim as a "derivative claim" in his capacity as "a member at the time of the breach of fiduciary duties." (Compl., 11:¶89.)

Plaintiff alleges that "Ballantyne has breached his fiduciary duties by, among other things, usurping corporate opportunities in favor of other businesses and/or engaging in unwarranted and unfair deals between Allsite and his other companies and thereby causing the value of Allsite to diminish." (Compl., 12:¶92.)  Plaintiff names other entities formed by Ballantyne "that either directly or indirectly compete with Allsite and thereby usurp business opportunities from Allsite," including "Builtsure[, LLC], Fabriteture, LLC, . . . and Pavilion Event Services, LLC." (Compl., 6:¶37.)  As to Defendant Cofran, Plaintiff alleges that "[t]o the extent Cofran was aware of Ballantyne's improper actions, Cofran breached his fiduciary duties to Allsite by allowing Ballantyne to usurp corporate opportunities and fleece Allsite by approving sweetheart deals with [Allsite]." (Compl., 12:¶93.)  Plaintiff alleges that he was damaged by "a decrease in the value of Allsite at the time of [his] sale of his membership interest in Allsite." (Compl., 12:¶94.)

Defendants point to Nevada statutes which provide that a member is not generally liable to a limited liability company or to other members for breach of fiduciary duty for good faith reliance on the provisions of an operating agreement. *See* Nev. Rev. Stat. § 86.286(6). Defendants then argue that Plaintiff waived this claim pursuant to the Mutual Release, discussed above.  Defendants also argue that Plaintiff ratified and participated in the business transactions with Builtsure, LLC, as shown by his ten percent ownership interest and receipt of the profits, and that Plaintiff is therefore barred from asserting this claim, even if there was a breach of loyalty.  Finally, Defendants argue that Builtsure's business of selling fabric structures did not compete with Allsite's renting of fabric structures.

Plaintiff does not dispute his ownership interest in Builtsure, but argues that this does

not bar him from asserting a claim on behalf of Allsite.  Plaintiff disputes the extent of his participation and ratification of the Builtsure business transactions, and alleges that the Builtsure business is not the only example of violations on behalf of Ballantyne and Cofran, as stated in his Complaint.  Here, the Court agrees, and finds that Plaintiff has adequately alleged facts to show a plausible violation of the fiduciary duties owed to Allsite.  Therefore, this claim will not be dismissed.

## III.   CONCLUSION

**IT IS HEREBY ORDERED** that the Motion to Dismiss (ECF No. 12) is **GRANTED in part and DENIED in part**.  The motion is denied as to Plaintiff's fifth, sixth and seventh causes of action for breach of contract and breach of the covenant of good faith and fair dealing, and as to Plaintiff's eighth cause of action for breach of fiduciary duty.  The motion is granted as to Plaintiff's remaining claims.  Plaintiff's third and fourth causes of action for negligent and intentional misrepresentation and fraud in the inducement, as well as his ninth cause of action for tortious breach of the covenant of good faith and fair dealing are **DISMISSED without prejudice, with leave to amend**.  To the extent that Plaintiff's first and second claims for relief are separate causes of action, they are **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that the Motion for Partial Summary Judgment (ECF No. 17) is **DENIED**.

**DATED** this 29th day of March, 2013.

_____
Gloria M. Navarro
United States District Judge